**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, an Ohio corporation | No. 19-55350 |
| Plaintiff-counter-defendant-Appellee, | D.C. No. 2:18-cv-03625-PA-AFM |
| v. | MEMORANDUM[*] |
| PTB SALES, INC., a California corporation, | |
| Defendant-counter-claimant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Submitted May 15, 2020[**]
Pasadena, California

Before: EBEL,[***] WARDLAW, and HUNSAKER, Circuit Judges.

In this insurance coverage dispute, appellant PTB Sales, Inc. ("PTB")

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

challenges a summary judgment ruling in favor of appellee Scottsdale Insurance Company ("Scottsdale"). PTB purchased a commercial general liability policy ("Policy") from Scottsdale in 2016. In 2017, Scottsdale funded PTB's defense in an underlying action between PTB and its competitor, Brooks Automation, Inc. ("Brooks"). Scottsdale also contributed to the settlement of that action.

Scottsdale then brought this action against its insured, PTB, seeking declaratory relief and reimbursement of the defense costs and settlement expenses it had paid. PTB countersued, alleging various claims for breach of contract and bad faith. Scottsdale moved for summary judgment on its claims and on PTB's counterclaims. PTB opposed Scottsdale's motion but did not itself move for summary judgment. The district court granted Scottsdale's motion in its entirety and entered judgment in favor of Scottsdale. PTB now appeals. Because the parties are familiar with the facts, we do not recount them here. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

1. The district court correctly concluded that Scottsdale had no duty to defend PTB in the Brooks action because the underlying allegations either were not potentially covered under the Policy's personal and advertising injury coverage, or else fell within the Policy's exclusions. Under California law, a duty to defend arises when the underlying complaint "pleads[] facts giving rise to the potential for coverage under the insuring agreement." Street Surfing, LLC v. Great

2

Am. E & S Ins. Co., 776 F.3d 603, 607 (9th Cir. 2014) (quoting Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 19 (1995)). PTB has failed to show that the underlying allegations implicated "the use of another's advertising idea" or trade dress infringement, the only "covered offenses" at issue. See Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 600 F.3d 1092, 1098 (9th Cir. 2010). Brooks alleged trademark infringement against PTB. It did not raise any facts related to trade dress—i.e., the "total image" of the labels. See Moldex-Metric, Inc. v. McKeon Prods., Inc., 891 F.3d 878, 881 (9th Cir. 2018). Nor did it raise any claims related to any of Brooks' advertising ideas.

Even if the Brooks allegations implicated the use of advertising ideas or trade dress infringement, those offenses fall within the Policy's prior publication, known injury, and intellectual property exclusions. The prior publication exclusion precludes coverage for any "'[p]ersonal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period." The known injury exclusion precludes coverage for "personal and advertising injury" that "was, prior to the policy period, known to have occurred by any insured." Both exclusions squarely apply. The policy period began on September 26, 2016. Brooks sent a demand letter regarding the infringing labels before then, on May 17, 2016. The record clearly shows that PTB used the offending labels prior to the

3

policy period, which began on September 26, 2016, such that the prior publication exclusion applies. And the May 17, 2016 demand letter provided notice to PTB, again prior to the policy period, that an injury had occurred, such that the known injury exclusion applies.

The intellectual property exclusion also bars coverage. The intellectual property exclusion eliminates coverage for "'[p]ersonal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." This exclusion applies because it expressly bars coverage for trademark infringement claims. And, as described above, Brooks' allegations centered on trademark infringement.

Thus, the underlying allegations in the litigation between Brooks and PTB were not potentially covered under the Policy, and therefore Scottsdale owed no duty to defend PTB.

2. The district court did not err in concluding that Scottsdale properly reserved its rights to recoup its defense costs and settlement expenses. An insurer "properly reserve[s] its rights" to recoup its defense costs by advising its insured that it would provide a defense under a reservation of certain rights, including "[t]he right to seek reimbursement of defense fees paid toward defending causes of action which raise no potential for coverage." Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 650–51 (2005). Even though Scottsdale initially informed PTB

4

that the Brooks Complaint "may include allegations of personal and advertising injury," Scottsdale also advised that it would only fund a defense subject to a reservation of "the right to seek reimbursement . . . for funds paid towards the defense of claims not covered under the policy." It repeated that reservation of rights in three subsequent communications with PTB.

Likewise, to recoup its settlement expenses, an insurer must make "a timely and express reservation of rights." Blue Ridge Ins. Co. v. Jacobsen, 25 Cal. 4th 489, 502 (2001). Here, after an unsuccessful attempt to settle during the parties' first mediation, Scottsdale sent PTB a letter reserving "the right to seek reimbursement for any judgment or settlement paid." During the second round of settlement negotiations, Scottsdale twice offered to "contribute $300,000 toward settlement of this matter, subject to its reservation of rights," in response to Brooks' $850,000 settlement demand. Brooks then reduced its demand to $725,000 and Scottsdale increased its settlement offer to $350,000. A reasonable party in PTB's position would have understood Scottsdale's reservation of the right to seek reimbursement for "any settlement" to apply to its offer to contribute $350,000, as both were made during the second attempt at settlement negotiations. Cf. State Nat'l Ins. Co. v. Khatri, 2013 WL 5183193, at *6 (N.D. Cal. Sept. 13, 2013) (explaining that, where parties made "two distinct attempts to settle" a lawsuit, the reservation of rights made in connection with the earlier repudiated

5

settlement offer did not apply to an offer made in the second round of settlement negotiations).

3. The district court correctly concluded that Scottsdale did not breach a duty to fund independent counsel for PTB under California Civil Code § 2860. Under Section 2860, an insurer must provide independent counsel to the insured "[i]f the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises." The district court properly concluded that this claim failed as a matter of law because Scottsdale owed no duty to defend. Moreover, we note that there was no conflict of interest, which arises "when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." Cal. Civ. Code § 2860(b). Coverage depended simply on a comparison of the allegations in the Brooks Complaint against the terms of the Policy. In this case, that is a solely legal issue, and the provisions of the Brooks Complaint and the Policy are fixed and not susceptible to manipulation by appointed counsel.

4. Finally, the district court did not err in granting summary judgment in Scottsdale's favor on PTB's counterclaim for bad faith interference with the prosecution of PTB's counterclaims against Brooks. The record shows that PTB voluntarily settled its counterclaims against Brooks in exchange for $250,000. The record further shows that PTB entered into the settlement agreement with notice

6

that Scottsdale had reserved its rights to recoup any settlement expenses, yet PTB asked Scottsdale to fund the settlement, which it did. There is simply no evidence that Scottsdale interfered with PTB's successful and self-initiated effort to settle its claims against Brooks for $250,000. The district court therefore properly granted Scottsdale's motion for summary judgment on PTB's counterclaims against Scottsdale.

**AFFIRMED.**